In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Assets of the SECOND RUSSIAN INSURANCE COMPANY.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant; HAMBURG INSURANCE COMPANY and Others, Respondents.

First Department, December 31, 1926.

Insurance — liquidation of defunct United States branch of Russian fire insurance company — said branch is in process of winding up by Superintendent of Insurance — actions commenced by foreign creditors against domestic branch were stayed on granting liquidation order — error to modify liquidation order so as to permit said creditors to proceed and to direct Superintendent of Insurance to defend — said order violates Insurance Law, § 63, which is exclusive in its operation and furnishes complete procedure — foreign creditors are not policyholders under Insurance Law, §§ 27, 28.

The United States branch of a Russian insurance company was placed in the hands of the Superintendent of Insurance for liquidation. Prior thereto foreign creditors had commenced actions against the domestic branch but said actions were stayed in the liquidation order. It was error for the court to modify that order so as to permit said foreign plaintiffs to proceed with the prosecution of their actions and to direct the Superintendent of Insurance to defend the actions, for section 63 of the Insurance Law, which is exclusive in its operation, furnishes complete procedure for the protection on the basis of equality of all interested parties.

The foreign creditors do not come within the description of policyholders under sections 27 and 28 of the Insurance Law and claimants outside of those within the scope of those two sections are not entitled to any preference in the assets of the domestic branch, but they must be left to be dealt with alike by the

courts of the country of the creation of the corporation where its remaining assets must be distributed and to which the State Superintendent of Insurance must remit the balance in his hands.

APPEAL by the People of the State of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 25th day of September, 1926, modifying the order of liquidation entered in the above-entitled proceeding on the 22d day of May, 1925, so as to permit the plaintiffs in certain actions brought prior to said liquidation order by non-residents on foreign claims to proceed with the prosecution thereof, and directing the State Superintendent of Insurance to defend, and vacating and setting aside an order entered herein on the 10th day of October, 1925, denying the motion to modify the order of liquidation.

*Clarence C. Fowler, Special Deputy Attorney-General*, of counsel [*Joseph C. H. Flynn, Deputy Attorney-General*, with him on the brief; *Albert Ottinger, Attorney-General*], for the appellant.

*Milton B. Ignatius* of counsel [*Hartwell Cabell* with him on the brief; *William B. Devoe*, attorney], for the respondents Hamburg Insurance Company and others.

*Albert Massey* of counsel [*Michael S. Gleason* with him on the brief], for the respondents Second Russian Insurance Company and Meinel & Wemple, Inc.

DOWLING, J.  The Second Russian Insurance Company was a corporation organized and existing under the laws of a country "outside of the United States of America," such as is referred to in section 27 of the Insurance Law (as added by Laws of 1919, chap. 382).  It was incorporated in 1835, under the laws of the Russian Empire, and was licensed and authorized in 1913 to transact the business of fire insurance in this State in compliance with the Insurance Law, after having made the statutory deposits required by section 27 for the protection of policyholders and creditors who might deal with its United States branch.  The unearned premiums on business done by the corporation were also trusteed for the same purpose.  In 1916 it was licensed to transact in addition the business of marine insurance.

The government of the Russian Empire was succeeded by the Soviet regime, now the Union of Soviet Republics.  In 1918–1919 the Soviet regime proclaimed the business of insurance a State monopoly and by decrees of nationalization also expropriated the assets of all Russian insurance corporations, required their liquidation and absolved them from obligations to creditors other than workmen and laborers.  The imperial government of Germany was

succeeded by the Republic of Germany, which, in July, 1922, entered into a treaty with the Soviet regime which not only recognized that regime as the *de jure* government of Russia, but released any rights of the German nation and its nationals otherwise existing under international law by reason of the said Soviet decrees. Thereafter in August, 1922, the Hamburg Insurance Company, one Behre and others, all German nationals, commenced actions against the Second Russian Insurance Company in the New York Supreme Court, upon claims alleged to have arisen prior to the Soviet decrees. These actions, more specifically, are as follows: (1) Hamburg Insurance Company, a German corporation, plaintiff; an action at law instituted August 15, 1922, to recover moneys loaned of $125,000. (2) Ernest Behre `et al.`, German nationals (comprising the copartnership of H. Mutzenbecher, Jr., a German firm), plaintiffs; an action in equity instituted September 16, 1922, to recover commissions for acting as agent for United States business of said Second Russian Insurance Company. No one of the plaintiffs in these actions claims to be a United States creditor or policyholder of the insurance company. In each case the insurance company had duly appeared by its attorney, and filed its answer, and on February 11, 1925, the actions were pending trial.

On or about February 11, 1925, the State Superintendent of Insurance of the State of New York applied to the Supreme Court to take over the property and assets of the Second Russian Insurance Company for the purposes of liquidation, and the final order of liquidation was entered May 22, 1925, which order was affirmed by this court (215 App. Div. 796) and by the Court of Appeals (243 N. Y. 524). The liquidation order restrained the further prosecution of actions against the company.

On June 26, 1925, the respective plaintiffs in the Hamburg and Behre actions above set forth (said actions having in the interim been reached for trial) moved to modify the stay. This motion was denied October 9, 1925. A reargument resulted in the order appealed from which provides: " That the order entered in the office of the Clerk of New York County on May 22, 1925, in the above entitled proceeding be and the same hereby is modified to the extent that the plaintiffs, the Hamburg Insurance Company and Ernest Behre, *et al.*, shall be allowed to proceed with the trial of their actions against the Second Russian Insurance Company in the Supreme Court of New York County, in the same manner and to the same extent as if the order of May 22, 1925, in the above entitled proceedings had not been made, except that since the Second Russian Insurance Company may not defend said actions and since it is the function of the Superintendent

of Insurance, in pursuance of his duties to conserve the assets of the Second Russian Insurance Company, under the provisions of Section 63 of the Insurance Law, to defend the corporation against the aforesaid actions, that said Superintendent of Insurance be and he hereby is empowered, authorized and directed to defend the aforesaid actions in the place and stead of said corporation and to pay from the United States assets of the Second Russian Insurance Company in his possession all expenses in connection with the defense of the aforesaid actions."

I am of opinion that this order is erroneous in principle and was improperly granted. It constitutes an unjustifiable interference with the procedure laid down for the liquidation of a delinquent insurance company in section 63 of the Insurance Law, which is exclusive in its operation and furnishes a complete procedure for the protection of the rights of all the parties in interest in the. case of such an insurance company. The order of liquidation was based upon allegations that the Second Russian Insurance Company was insolvent; that it was in such a condition that its further transaction of business would be hazardous to its policyholders, creditors and the public; that its property had been sequestrated; that it had willfully violated its charter and the laws of this State; that it had been placed in the hands of a receiver, and that its United States branch was in a hazardous condition. (243 N. Y. 524, affg. 215 App. Div. 796.) The affirmance in the Court of Appeals was based on the provisions of clause (e) of subdivision 1 of section 63 of the Insurance Law (as added by Laws of 1909, chap. 300), which provides for liquidation by the Superintendent of Insurance if the corporation " is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public."

In *Matter of City E. F. Ins. Co., Ltd. (Carpenter & Baker)* (207 App. Div. 249) this court reversed an order granting leave to the assignee of a Canadian claimant to sue the foreign company in liquidation under section 63, and issue an attachment against surplus assets held by the Superintendent of Insurance and remaining after the United States policyholders and creditors were paid in full. The Court of Appeals affirmed the order of this court. (*Matter of People [City Eq. Fire Ins. Co.]*, 238 N. Y. 147; followed in *Matter of People [Norske Lloyd Ins. Co.]*, 242 id. 148, 165.) In so doing, it was pointed out that section 63 of the Insurance Law indicates the intent of the Legislature that in taking possession of the property and conserving the assets of a delinquent insurance corporation (as Judge ANDREWS pointed out at p. 156), " The Superintendent is not, therefore, to take possession of the property

4

solely for the benefit of creditors or policyholders in this State or in the United States but for the interest of all its policyholders, creditors and stockholders wherever they may be. He is to liquidate the business here for that purpose. The section proceeds that if the court directs the Superintendent to take possession of the property and conserve the assets of the corporation, his rights and duties with reference to the corporation and its assets shall be those heretofore exercised by and imposed upon ancillary receivers of foreign corporations in this State.

" So far as is appropriate the proceedings are made analogous to the liquidation of a domestic corporation. What is done in such a case is well understood. The Superintendent collects the assets and after deducting expenses distributes them among policyholders, creditors and stockholders as their interests may appear, preserving equality among each class of claimants. In the case of a foreign corporation the liquidation may be but partial. The funds deposited with the Superintendent are primarily for the benefit of its policyholders in the United States. Having realized on these funds, having taken possession of all the assets of the corporation within his reach, having satisfied the claims of such policyholders and of local creditors, what is he to do with the surplus? We think the statute implies the necessary answer. He is an ancillary receiver of a foreign corporation. The very word ' ancillary ' means subordinate or auxiliary to the principal. (*Steele* v. *Conn. Genl. Life Ins. Co.*, 31 App. Div. 389.) He is, therefore, ' to assume administration in aid of the primary receiver.' (*Low* v. *Pressed Metal Co.*, 91 Conn. 91.) If there remains a surplus in his hands after all proper charges and claims have been deducted this must be transferred to the receiver of the domicile. (*People* v. *Granite State Provident Assn.*, 161 N. Y. 492; *Irwin* v. *Granite State Provident Assn.*, 56 N. J. Eq. 244; *Southern B. & L. Assn.* v. *Miller*, 118 Fed. Rep. 369.)"

And Judge ANDREWS again said (at p. 157): "Not content with this statement, however, the Legislature gives a further indication of its purpose.

" Primarily the Superintendent takes possession of the assets for a specific object. But secondarily in the interest of the general policyholders, creditors and stockholders. He does not dissolve the corporation and distribute its assets. Necessarily that must be done in England. * * * Here we have the attempt of a general creditor, with no equities affecting the funds in the hands of the Superintendent, to secure a preference over other general creditors of the corporation. To permit it would not be to do equity. In England, as here, equality is equity with regard to insolvent estates. Some-

times the principle that the diligent are to be rewarded interferes with this general concept. But after the courts on the application of the Superintendent have acted, then the Legislature intended that the rule of equality first as between local creditors and next among all others should prevail. We think that any surplus that may remain in the hands of the Superintendent must be remitted to the English liquidator. So only can the assets be conserved for the benefit of its policyholders, creditors and stockholders.

" Placing our decision as we do upon the construction of section 63 of the Insurance Law, we do not examine or decide the many other questions argued before us.

" We hold that under that section once the Superintendent has taken possession of the assets of a foreign insurance corporation, no lien by attachment may be acquired upon these funds, and that when the trust confided to him has been fully administered any surplus remaining must be transmitted by him to the officer at the corporation's domicile having general control of the winding up or dissolution of such corporation."

In *Matter of People (Norske Lloyd Ins. Co.)* (242 N. Y. 148) one of the questions certified was: " 1. Did the Supreme Court of the State of New York have jurisdiction in the above-entitled proceeding to make the order appealed from authorizing, directing and permitting the New York liquidator to pay from the United States assets of the Norske Lloyd Insurance Company, Ltd., the allowed and approved claims of claimants described in the order appealed from as claimants of the second class? "

The " second class " of creditors therein referred to were citizens and residents of this country based upon policies issued by the company through foreign agencies.

In answering this question in the negative Chief Judge HISCOCK said (at p. 163): " By these views in reference to the statute we are brought to the proposition, upon which respondents must rely for affirmance of so much of the order appealed from as provides for payment to the second class of policyholders, that there is some principle of equity, comity or public policy which authorizes the application of the funds in the hands of the Superintendent to payment in full of local creditors before transmission of any surplus to the primary or domiciliary receiver. We know of no such principle which, under the circumstances of this case, is recognized by our courts. The present question is not one between a foreign receiver and local creditors who have acquired a specific lien by attachment or otherwise. It is a question of the duty of a conceded ancillary receiver who has come into possession of the insolvent's property before any lien was acquired thereon by creditors.

The word ' ancillary ' defines a receiver who has been appointed in aid of and in subordination to a foreign receiver for the purpose of collecting and taking charge of the assets of the insolvent corporation in the jurisdiction where he is appointed. This conception of such a receiver indicates that he will act in aid of the primary receivership and not to the end of thwarting its purposes." And the chief judge, referring to the case of *City Eq. Fire Ins. Co. (supra),* said (at p. 165): " That case did not present the question which arises here between the foreign receiver and different classes of policyholders and, therefore, did not call for such a precise definition of the policyholders entitled to protection under sections 27 and 28 of the Insurance Law as has been required here. But the opinion starting with the statement that the trust funds and securities held by the State Superintendent of Insurance were ' for the purpose of paying all legal and valid claims of its [the insolvent corporation] policyholders in the United States as provided by sections 27 and 28 of the Insurance Law ' then stated that the Superintendent held the property not ' solely for the benefit of creditors or policyholders in this State or in the United States but for the interest of all its policyholders, creditors and stockholders wherever they may be,' and that, having satisfied the claims of policyholders from ' the funds deposited with the Superintendent  *  *  *  for the benefit of its policyholders in the United States,' thereby of course referring to the provisions of the Insurance Law already enumerated, it was his duty as ancillary receiver to transmit the surplus to the primary receiver. The entire opinion makes it clear that the surplus which it was thus held should be transmitted to the primary receiver was the surplus remaining after payment simply of policyholders as provided in sections 27 and 28 of the Insurance Law excluding any other policyholders."

The respondents herein do not come within the description of policyholders under sections 27 and 28 of the Insurance Law (as added by Laws of 1919, chap. 382). The cases cited are conclusive upon the proposition that as to all claimants outside of those within the scope of those two sections equality is equity, and that none should be permitted to have his claim preferred for payment either by attachment or judgment, but all should be left to be dealt with alike by the courts of the country of the creation of the corporation where its remaining assets must be distributed among its foreign creditors, policyholders and stockholders, and to the appropriate representative of the corporation in which country the Superintendent of Insurance must remit the balance in his hands, fater he has made the payments authorized by law in this State.

Further, if the State Superintendent of Insurance has not the right to pass upon and pay claims such as those asserted by the respondents, the funds in his hands should not be subjected to the expense of defending them. In the prior appeal to this court from the order of liquidation, the petition of the Superintendent of Insurance set forth: " That nationals of Great Britain and Norway claiming to hold claims against the Second Russian Insurance Company by virtue of the aforesaid agreements and treaties have assigned claims to citizens of the United States solely and expressly for the purpose of endeavoring to collect debts arising out of transactions between said assignors and the Second Russian Insurance Company within the jurisdiction of said foreign countries and without the jurisdiction of the United States and concerning subject matters within those countries and not located within the territory or jurisdiction of the United States of America, thus, attempting, by actions in the courts of this country, to carry into effect and procure the benefits of said reinsurance treaties and the recognition of said Soviet Government and securing therefrom preferences over the nationals of other countries; that such actions are several in number and have been before the courts of this State several times and the expenses incurred by the United States Branch in defending the same and expenses which will be incurred if the United States Branch is allowed to continue in business, will impair the securities of United States policyholders and creditors to the extent of such expenses of litigation and otherwise."

The report of J. F. Collins, the examiner of the Department, forming part of such motion papers, shows: " Several of these actions have been before the courts of this State several times and the expenses incurred by the United States Branch in defending the same and the expenses which will be incurred if the United States Branch is allowed to continue in business, will impair the securities of United States policyholders and creditors to the extent of such expenses of litigation and the United States Branch should not be subjected to the continued litigation which will result from these actions and those anticipated to come in the future, all to the detriment and injury of U. S. policyholders and creditors." There is also a statement to the effect that up to the time of the petition, the United States branch had incurred legal fees amounting to approximately $30,000 in the pending actions by the British and foreign companies seeking to attach the United States assets.

If the procedure authorized by this order is to be approved, there is no reason why every foreign national should not be authorized to proceed with his action against the corporation in the courts of this State, and to put the Superintendent of Insurance

to the expense of defending the suits out of the trust funds in his hands, thus defeating one of the purposes for which the liquidation was ordered, which was to enjoin the prosecution of all litigation against the company and have its affairs settled up with the least possible expense; and at the same time reviving the life of litigation whose existence had been one of the reasons for the forcing of the company into liquidation.

I believe that the order appealed from is in direct conflict with the provisions of the Insurance Law and violative both of its spirit and letter, and is in conflict as well with the decisions of the Court of Appeals hereinbefore cited.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Ordered reversed, with ten dollars costs and disbursements, and motion to modify order of May 22, 1925, denied, with ten dollars costs.