In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the NORTHERN INSURANCE COMPANY OF MOSCOW, RUSSIA, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Appellant, Respondent; NORTHERN INSURANCE COMPANY OF MOSCOW, RUSSIA, and Others, Appellants.

HAMILTON WARD, Attorney-General of the State of New York, Respondent.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the RUSSIAN REINSURANCE COMPANY OF PETROGRAD, RUSSIA, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Appellant, Respondent; RUSSIAN REINSURANCE COMPANY OF PETROGRAD, RUSSIA, Appellant.

HAMILTON WARD, Attorney-General of the State of New York, Respondent.

In the Matter of the Application of THE PEOPLE OF THE STATE OF New York, by JAMES A. BEHA, Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the FIRST RUSSIAN INSURANCE COMPANY ESTABLISHED IN 1827, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Appellant, Respondent; FIRST RUSSIAN INSURANCE COMPANY ESTABLISHED IN 1827 and Others, Appellants.

HAMILTON WARD, Attorney-General of the State of New York, Respondent.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, Superintendent of Insurance

of the State of New York, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the Moscow Fire Insurance Company of Moscow, Russia, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

Superintendent of Insurance of the State of New York, Appellant, Respondent; Moscow Fire Insurance Company of Moscow, Russia, Appellant.

Hamilton Ward, Attorney-General of the State of New York Respondent.

In the Matter of the Application of The People of the State of New York, by James A. Beha, Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the Second Russian Insurance Company and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

Superintendent of Insurance of the State of New York, Appellant, Respondent; Second Russian Insurance Company and Others, Appellants.

Hamilton Ward, Attorney-General of the State of New York, Respondent.

In the Matter of the Application of The People of the State of New York, by James A. Beha, Superintendent of Insurance of the State of New York, Respondent, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the Russian Reinsurance Company of Petrograd, Russia, Appellant, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

(Re Application of Russian Reinsurance Company and Others, Appellants, for an Order Declaring and Determining the Disposition of the Surplus of United States Assets of Russian Reinsurance Company.)

In the Matter of the Application of The People of the State of New York, by James A. Beha, Superintendent of Insurance of the State of New York, Respondent, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the First Russian Insurance Company Established in 1827, Appellant, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

(Re Application of First Russian Insurance Company Established in 1827 and Others, Appellants, for an Order Declaring

and Determining the Disposition of the Surplus United States Assets of the First Russian Insurance Company Established in 1827.)

First Department, May 29, 1930.

*James F. Donnelly* of counsel [*Alfred C. Bennett* and *John M. Downes* with him on the brief; *Clarence C. Fowler*, attorney], for the Superintendent of Insurance, liquidator, etc.

*Paul Bonynge* of counsel [*Bonynge & Barker*, attorneys], for the Northern Insurance Company and others, and Second Russian Insurance Company and creditors thereof.

*Joseph C. H. Flynn* of counsel [*Hamilton Ward, Attorney-General*], for the respondent State of New York.

*Frederick B. Campbell* of counsel [*Paul C. Whipp* with him on the brief; *Campbell & Whipp*, attorneys], for Russian Reinsurance Company of Petrograd, Russia, First Russian Insurance Company Established in 1827, Moscow Fire Insurance Company of Moscow, Russia, and others.

*Walter H. Pollak* of counsel [*Engelhard, Pollak, Pitcher & Stern*, attorneys], for the appellant G. Frank Dougherty.

*Borris M. Komar* of counsel for the claimant James A. Tillman, respondent.

McAvoy, J. These are nine appeals. Two of the records are appeals from final orders made at Special Term. Each of these records contains two orders; one made on September 7, and the other made on September 10, 1929, in the case of the Northern Insurance Company of Moscow, and the others made on the same dates in the case of the Second Russian Insurance Company.

The appeals from the four final orders in the two mentioned cases relate to a plan of distribution of the surplus assets of both of these companies, and the two orders in each of the two cases are supplemental, the one to the other.

The other five appeals are from interlocutory orders in the cases of Russian Reinsurance Company of Petrograd, First Russian Insurance Company, Established 1827, Moscow Fire Insurance Company of Moscow, Russian Reinsurance Company of Petrograd, and the First Russian Insurance Company, Established in 1827.

The latter two are appeals from orders which were made in November, 1927, on the same date. They were made at the time receivers were appointed and these orders denied an application for a referee to make a plan of disposition of the surplus assets, which the court at Special Term then considered should be turned over to the receivers, who were to advertise for claimants, stockholders, shareholders and policyholders, so as to distribute the funds. Such orders were not entered until April 11, 1928, after appeals taken in the receivership proceedings had been decided (223 App. Div. 378; Id. 384) and the provision for a receivership eliminated. Two separate motions have been made to dismiss these appeals and denied. (See 224 App. Div. 726; 227 id. 702.)

The other three of the five interlocutory orders were made at Special Term at about the time the last of the final orders in the two proceedings which have been heard by referees were made.

In the appeals from orders relating to First Russian Insurance Company and Moscow Fire Insurance Company there are also appeals by attorneys for claimants who are holders of life insurance policies, or assignees of policyholders, who have claims against the First Russian Insurance Company. The First Russian Insurance Company is both a fire and life insurance company. These claimants wish to modify the order, in so far as it restrains them from collecting judgments after suits which they are permitted to bring through the vacating of the injunction in the liquidation order which restrained all suits and required claims to be made in the liquidation proceeding to the Superintendent of Insurance.

The four final orders could have been incorporated in one single order. The reason for separate orders apparently was because the referee's fees and exceptions to the referee's report and the stenographer's fees were omitted from the first order, but the important clauses with respect to the plan of distribution are practically the same in both orders. They provide that the Superintendent continue to hold the surplus assets after paying the domestic policyholders and creditors; that the injunction contained in the liquidation

order barring persons from suing in the courts be vacated; that no creditor be barred from presenting claim to the surplus assets; permitting domestic creditors to offer proof of their claims here before any surplus funds are sent to any foreign liquidator; rejecting any claim made by the Soviet government and by second or third class creditors, and by or on behalf of the directors of the Northern Insurance Company of Moscow and the Second Russian Insurance Company and by or on behalf of the Northern Insurance Company of Moscow or the Second Russian Insurance Company themselves.

These directing clauses are found in both orders, September seventh and September tenth, in both the Second Russian Insurance Company and the Northern Insurance Company cases. There are also in the orders of September tenth, in both cases, certain clauses embodying local law, international law and constitutional law said to be applicable to the facts in the case. They direct that the Superintendent pay all local class 1 claims in full with interest; that he retain sufficient funds to defray further reasonable expenses of liquidation, taxes, etc., and that the remaining assets " be and the same hereby are declared to be accrued surplus funds " which shall be held by the Superintendent as trust funds, " always ready and available for transmission to the parent corporation or the legal representative or successors of the parent corporation at its domicile in Russia, and subject to the further order of this Court in the above-entitled proceeding." *Secondly*, the court takes judicial notice of the fact that the United States Government does not recognize the present ruling authority or government in Russia and that prior to the Soviet regime there existed between the United States and the Empire of Russia certain treaties which are still in full force and effect and under which the private rights of the citizens of all nations, including those of Russia who are creditors, policyholders and shareholders, are entitled to share in the surplus assets of this Russian company held here in trust for their benefit; and, *thirdly*, that the surplus funds may not now be lawfully transmitted to the parent corporation or its legal representative or successor in Russia without violating the law of our land, nor may the surplus funds be distributed by the Superintendent of Insurance without destroying the trust and without violating, impairing or destroying the private rights of the citizens of Russia, and finally that the Superintendent be permitted to manage and invest surplus funds in treasury certificates of the United States government or otherwise for the best interests of the estate.

In the interlocutory orders there are provisions similar to those in the final orders. The appeal, however, in those cases is by the directors of the First Russian and the other two companies, and

by certain of the creditors who seek a reversal in so far as the court refused to appoint the referee to hear their claims in the case of the creditors and in the case of the companies to hear a plan which their directors surviving would set out for turning over the funds to them as representatives of the companies in this country to distribute the same or pay claims to second and third class creditors.

The Superintendent of Insurance appeals, in the two final orders and in the three interlocutory orders, from those portions thereof which direct that the restraining clause in the liquidation order be vacated; that no creditor be barred from present claim to the surplus funds; that any domestic creditor be permitted to offer proof of his claim here before transmission of the funds abroad, and that all other plans or parts of plans not specifically adopted be denied and rejected.

The Attorney-General appears as respondent, he not having appealed as to those portions of the order which did not carry out suggestions made by him.

The Northern Insurance Company and some of its creditors and the Second Russian Insurance Company appeal from all parts of the four final orders in the two proceedings affecting them, except as to the amount of the referee's fees.

It will thus be seen that the Superintendent's plan adopted by the court is nothing more than the holding of these funds here in the hands of the Superintendent as trustee, to await the recognition of the Soviet government or some government functioning in Russia which will recognize the parent company as existing and to transmit to such company at the foreign domicile all the surplus assets, there to be distributed by a domiciliary receiver in Russia, or by the parent company if reorganized as a going concern there, under the doctrine of *Matter of People, City Equitable Fire Ins. Co.* (238 N. Y. 147), and *Matter of People, Norske-Lloyd Ins. Co.* (242 id. 148).

The *Norske-Lloyd* case was the one in which the various kinds of claims which might be asserted in a proceeding of this kind were classified, as follows:

Class 1. Entitled to the preference of payment in full with interest out of the assets of the United States branch.

Such persons were those who took out their policy or contracted with the United States branch here. These claims in the cases under review have been passed upon and allowed by the Superintendent or claim referees.

Class 2. Citizens or nationals of the United States who took out their policies or contracted with the company outside the domesticated United States branch.

Class 3. Non-citizens of the United States and other nationals who took out their policies or made their contracts with the parent home company, or some branch other than the domesticated United States branch.

The second and third class claims were treated alike and remitted to a home receiver, or the home company, for payment of their claims, or in the case of these Russian companies to proceedings other than the domestic liquidation proceedings, if such may properly be instituted. This was held in *Matter of Second Russian Ins. Co., Hamburg Ins. Co.* (219 App. Div. 46) and the same case second time on appeal here (*sub nom. Matter of Beha* [*Second Russian Ins. Co.*], 224 id. 105); also in *Matter of People by Stoddard, Norske-Lloyd Ins. Co., Ltd.* (223 id. 823).

Since there are no home receivers here such as existed in the *City Equitable Case* (*supra*) and the *Norske-Lloyd Case* (*supra*), there is no such simple method of disposition as transmitting the funds to a home receiver or a home company.

The Superintendent states his plan as follows: " That the surplus funds may not be distributed at the present time; but should be disposed of by the Supreme Court of the State of New York decreeing that the Superintendent of Insurance of the State of New York hold such surplus until a government of Russia having power to exercise its authority in Russia is recognized by the government of the United States, and that pending the recognition of such a government in Russia by the United States, all suits or proceedings for the distribution of such surplus to the second and third class creditors, stockholders, directors, or any other person or persons claiming any part of such surplus be restrained and enjoined."

The Superintendent further recommends and suggests: " That the Superintendent of Insurance be authorized and permitted to close the local liquidation as soon as possible and to discontinue all further expense of such local liquidation; that the claim of the State of New York filed by the Attorney-General to recover the surplus funds on the grounds of abandonment be dismissed; that the Superintendent be authorized, directed and permitted to invest so much of the cash surplus as can be invested in any new issues of short term Treasury Certificates of the United States Government that may be available for such investment; that the cash not so invested be kept on deposit in solvent banks of the State of New York at such interest as may be obtained thereon; that such of the securities as the Superintendent may deem it wise to sell be sold at such time or times as the Superintendent may deem advantageous for the estate, and that the surplus be held by the

Superintendent as provided for in the plan of the Superintendent hereinbefore set forth." (Second Russian Report, pp. 152, 153; identical recommendations in each of the five reports.)

It is the contention of the Superintendent that under certain treaties made with the old Empire of Russia, and which are still in force until recognition of the new regime or some successor, private rights of citizens of Russia who are creditors, policyholders or shareholders in any of these five Russian companies in liquidation must be protected, and that such private rights are impressed upon any surplus in these proceedings, and any disposal or distribution thereof must be subject to those treaties and made thereunder. Through the New York liquidator the Superintendent is unable to make any distribution of the surplus while the government in power in Russia is unrecognized by our government.

From a practical standpoint it would appear impossible to liquidate a foreign company situated as these companies are with respect to these surplus moneys.

The Superintendent asserts that it is impossible to determine, because of the absence of books and records which state the list of liabilities, how far they had been paid, what offsets or defenses exist to them, what is their total amount, who are claimants as creditors, policyholders or shareholders, and whether when all claims are ascertained there are sufficient funds to pay these claims in full or partially.

It appears from the testimony in the final order cases that such books and records as exist " are deposited in confusion in warehouses in Russia, or wholly unavailable for any proceeding which undertakes to distribute these funds according to the rights of the parties."

The opinions of the Court of Appeals in *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149) and *First Russian Insurance Co.* v. *Beha* (Id. 601) recognize that the rights of Russians to the surplus are entitled to protection by our courts pending recognition of the Soviet government or some successor government by the government of the United States.

In the present case the primary question presented is not whether the courts of this country will give effect to the Soviet decrees, " nationalizing " these companies, but is rather whether within Russia, or elsewhere outside of the United States, they have actually attained such effect as to alter the rights and obligations of the parties in a manner we may not in justice disregard, regardless of whether or not they emanate from a lawfully established authority recognized by our Executive Department or the Congress.

" Though this property in form belongs to the corporation, in

fact, if it has not been confiscated, the policyholders, creditors and shareholders are ev ntually entitled to it. Certainly it does not belong to the directors to do with as they will. The directors may not distribute these moneys in liquidation, for under the express provision of the charter, liquidation if ordered must be carried out by other officers. Moreover, it is somewhat difficult to see how or where under present conditions a distribution of the assets among policyholders, creditors or stockholders could be successfully carried out, except in Russia, from which the corporation is now excluded." (*Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149.)

The Court of Appeals further stated: "If it is urged that by so doing we may enable the Soviet government in case of recognition by the State Department to assert here an unjust claim based upon confiscation, the answer is that the responsibility rests upon that branch of our government to determine in the first instance whether and upon what terms the Soviet government should hereafter be recognized and the courts will then determine, subject to any rights granted by treaty, whether they will enforce any claim asserted by that government."

Thus, in this *Russian Reinsurance Case (supra)*, it is specifically held that the directors may not distribute these moneys in liquidation, but under the express provision of the charter of the company, if liquidation is carried out, it must be by other officers than the directors. The court stated that it was difficult to see how any distribution could be successfully carried out except in Russia, "from which the corporation [so far as it exists at all] is now excluded."

So far as enabling the Soviet government in case it is recognized by this government to assert a claim here, based on its confiscatory decrees, the court stated that the responsibility with respect to that rests on the branch of the Federal government, to wit, the State Department, to determine whether the Soviet government should hereafter be recognized, and the courts will then under such recognition determine, subject to such treaty rights as are granted, whether any such claim will be enforced which is asserted by the Soviet regime, if it be the government recognized.

It would seem that it would be the duty of our courts to protect the nationals of Russia just as we protect the nationals of other countries by keeping these funds for the ultimate owners until such time as they may be ascertained.

It is the duty of a sovereign to recognize private rights existing and outstanding under a prior government, and the protection of private rights of nationals of Russia is still the duty of this country.

These trust funds, which constitute the surplus of these liquidating

companies, under the commonly accepted law of nations are impressed with those private rights. Since it is impossible to reach the owners of these rights, because of non-recognition by the United States, or to ascertain who are such policyholders, creditors or stockholders of these companies, or who have succeeded to these rights as next of kin, it would seem that the only proper method of preserving these private rights is to follow the plan of the Superintendent.

We think, therefore, that the plan of the Superintendent should be adopted. No extension of the present proceedings by adding parties, such as foreign claimants, policyholders, stockholders or creditors, nor the institution of a new bill in equity to bring in foreign creditors, policyholders and stockholders of the Russian companies, would give the court jurisdiction to deal with these surplus funds; nor could any process be served within the confines of the Soviet Republic under the due process clause, which would be binding upon the parties.

It would be impossible for the liquidator here, or any person in possession of the fund, to determine whether the fund is sufficient to pay foreign debts in full, or in what percentage. A foreign claimant who happens to hear of a proceeding to fix and pay foreign claims against the parent alien company, might prosecute such claim to the detriment of others similarly situated, who had not heard of the proceedings, nor brought any action to enforce its claim.

It is asserted in the Second Russian case that the foreign claims exceed the surplus assets here by the proportion of approximately five to one.

The United States, and the courts of the State, owe no duty under our law to undertake a proceeding to settle these foreign claims as between foreigners, and such claims exist mostly among foreign citizens of other countries — in Germany, Norway, Sweden, Denmark, Holland, France and Italy, some of whom have treaties with the Soviet government, and may enter Russia for the purpose of protecting their claims, and some of which countries are protected by treaties with this country under which we are .bound to protect the nationals of those nations in their lawful rights.

The plan of the other three companies (First Russian Insurance Company, Russian Reinsurance Company and Moscow Fire Insurance Company) is to organize three separate New York insurance companies with a corresponding number of shares to those of the present companies; the appointment of three trustees by a justice of this court, who shall hold the stock until the respective stockholders, or their successors in interest, or heirs or devisees shall

appear and satisfy these trustees of their right to the stock, in which event such stock is to be turned over to the stockholder or his successor.

Any such transfer of property of these creditors, policyholders or stockholders to a corporation organized here, without giving any notice to the parent company, could not be lawfully carried out. The court would not be authorized to transfer these trust funds to the hazard of business, if that is contemplated (as to which there is disclaimer), or to a mere holding company for others without the consent of the owners. Even if they could be ascertained and due notice given, we would have no right to transfer the property of one class of persons to another class without the consent of the rightful owners of the shares.

We do not think that it would be wise to take trust funds out of the hands of a public officer of the State, acting as trustee, and transfer them to a new corporation supervised and controlled by foreign refugee directors, or their agents, especially since their terms have long since expired, who are ineligible for re-election and who may not function outside the domicile which created them, except for certain purposes, and especially without the consent of the beneficiaries or their knowledge.

The Attorney-General joins in the motion for the adoption of the plan of the Superintendent, but he believes that after payment of the domestic creditors the funds should be retained in the State of New York, not in the hands of the Superintendent of Insurance. He contends that the fund should be turned over to the Comptroller until such time arrives that the moneys may be delivered to the shareholders when they prove their respective interests. He states that the claim of the Attorney-General, based on the theory of escheat to the State, was suggested merely for the purpose of conservation of the funds until distribution.

The Attorney-General also states that claimants, in the meantime, should not be enjoined from bringing action or proceedings against the Superintendent to take down these funds, but that in no event should the fund be turned over to the so-called directors for distribution, nor even to second or third class creditors.

We see no merit in a plan which merely transfers the funds from one State officer to another, and permits a continuation, renewal and commencement of multitudinous suits to reach these funds. Suits so far begun have been successfully defended by the Superintendent. It would seem that the Superintendent was the appropriate person to continue as the holder of the funds, and the investing officer who will endeavor to bring about their increase and preservation until distribution comes.

In *Sliosberg* v. *New York Life Insurance Company* (244 N. Y.

482), which is suggested as holding that the stay of suits would be unconstitutional, the plaintiff was within the jurisdiction of the State, and the defendant, a New York corporation. There the court held that the plaintiff had the right to sue, and that a statute staying actions arising out of contracts made prior to 1917 by insurance companies organized under the laws of any State in the United States, in which performance was to be in Russia and payment in Russian rubles, until thirty days after recognition *de jure* by the United States of a government in Russia, had been specially passed to prevent these suits, and that such a statute impaired the obligations of a previously existing contract, which before the passage of that act had a remedial enforcement right in this State.

No foreign creditor had the right to sue any one of these five insurance companies here, even before the liquidation, because the claim was against the foreign companies, upon foreign business, and in no way related to the domesticated United States branches.

If we assume jurisdiction here of all suits brought by foreigners, of foreign causes of action, prior to liquidation or during liquidation, the funds set up here for the protection of domestic creditors might be dissipated.

There was not a liquidation proceeding in the *Sliosberg* case. There was no question of public concern or private rights invaded by his suit or unfair distribution of funds.

We think that *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149) lays down the specific rule governing the matter here. The *Sliosberg Case* (*supra*) has no application to the limitations of the restraining order.

The directors rely primarily in their demand on the case of *Petrogradsky M. K. Bank* v. *National City Bank* (recently decided in 253 N. Y. 23), but the rule there announced is not a controlling precedent governing the matters here. On first blush it would seem to be against the contention of the Superintendent as liquidator, but surplus funds here may not be turned over to the refugee directors in Paris, under that ruling.

The Court of Appeals said in the *Russian Reinsurance Case* (*supra*) that they questioned whether the agency of such directors " continues in full force and vigor after the lapse of years."

In the *Petrogradsky M. K. Bank Case* (253 N. Y. 23) the court said that the ruling in the *Russian Reinsurance Case* (240 N. Y. 149) was inapplicable to the situation before it, stating that the subject of the controversy in that case was a fund deposited in a bank to be held for a Russian insurance company's stockholders and creditors, and that the holding then was that in a suit in equity

" there is discretion, if not duty, to refuse a decree whereby a trustee will be directed to make payment of the subject of the trust to one of two claimants, unless there is power also by force of the same decree to protect against the rival." It is pointed out in the *Petrogradsky M. K. Bank* case that the rule is different in an action at law, and that in the case then pending (Bank of Petrograd) the subject of the controversy was not property burdened with a trust to be administered in equity; that the subject was an ordinary deposit in a bank, to be sued for in an action founded on that debt. In such actions, it is stated, the refusal to pay when due is not sustained without more by the presence of an adverse claim. The rule was declared to be that the defendant, if unable to interplead (the other claimant) " must respond to the challenge, and defend as best it can." It is obvious that such a decision does not show any intent on the part of the Court of Appeals to apply the decision in that action at law to a liquidation proceeding governed by equitable principles.

It also stated that the danger of double jeopardy there was not imminent, as the course of events had since attested.

The proof on the references in the Northern and Second Russian Insurance Company cases shows that the list of stockholders of these companies is unavailable; that the records have been destroyed or so located in warehouses in Russia that they might not be reached; that legal process could not issue beyond the borders of Russia, so as to give notice of these proceedings which would come within the due process rule, or constitute legal notice.

It is called to our attention that the French courts in June, 1928 (Court of Appeals of Paris), even after recognition by France of the Soviet government, refused to recognize the authority of these directors to take funds in the name of the corporation, and held that, in the absence of a new incorporation in France, the corporation no longer existed after the Soviet decree, and that the " Ordre Publique " did not compel the court to recognize the authority of the agency or of the company to bring that action to recover funds, holding that a foreign juristic person is recognized only in another State if it is recognized in its native State, or the State of its domicile.

In *Petrogradsky M. K. Bank Case (supra)* it was stated that the defendant bank was not required to follow the money into the hands of the trustees and see how they applied it; that the bank's duty was merely to pay.

In this case the duty is of a trustee who is bound to hold trust funds and pay over the same only to the real equitable beneficiaries, or *cestuis que trustent.*

These three directors, Andre, Schwetzoff and Goutchkoff, are acting as a self-appointed stockholders' committee, since they only represent 1,500 shares out of 12,000 shares of the Northern Company, and it would seem unwise to take these funds from the custody of an officer of the State of New York and give them to these directors without any protection to the stockholders.

What has been said about the Second Russian and the Northern Insurance Company of Moscow may be also said with reference to the directors of the other companies. There was more or less of a community of interest between all these Russian companies, and there was an inter-relation or interlocking of directorates therein.

It also appears that there is a dispute as to which of several boards of directors has the right to function. These directors are, therefore, disqualified from receiving these funds, and such funds should not be transmitted to them.

All the testimony shows that it would be impossible to make a distribution beyond ten per cent of the moneys remitted abroad to stockholders in the event that these moneys were sent abroad, and all the directors intend to do, if they receive the funds, is just what the State of New York would do, i. e., hold the moneys until the situation in Russia is so cleared that it will be possible to distribute the moneys to the rightful owners.

This would be merely a substitution of one trustee for another trustee. They have no scheme of distribution, nor is one possible. It would seem better to hold the funds in the custody of the State.

We think, therefore, that the orders in the Northern Insurance Company case and the Second Russian case should be modified in so far as they affect the injunction contained in the liquidation order of June 9, 1926, which restrains suits and proceedings by creditors, and that the provision of the orders' direction that, in the event that any judgments are entered on claims, " all judgment creditors or their assigns be restrained from collecting, by attachment, execution, or otherwise any part of said surplus funds," should be stricken from the orders.

The appropriate way to protect the funds is not to enjoin judgments obtained, but to enjoin claims in these foreign liquidation proceedings, and to decline jurisdiction over the controversy. If the court assumes jurisdiction, it must permit, under the Constitution, such judgment as is recovered to be enforced.

The orders below should, therefore, be modified by reversing in the Northern Insurance Company case and the Second Russian Insurance Company case, the portions indicated, to wit, the

portions numbered 1 to 5 in the notice of appeal by the Superintendent of Insurance, and otherwise affirmed.

As to the five interlocutory orders, in which referees are sought by the three other companies, to take testimony and to report on the principles of a plan submitted by the companies, or some alternate plan, in the event that the surplus was not to be returned to the companies as represented by their directors, the Superintendent of Insurance states that these orders were made following the submission of his second report and audit on his motion to confirm such report, and that prior to the entry of the orders appealed from, on objections filed to the report by the various companies concerning the disposition of the surplus funds, and annexed to objections to certain principles of the Superintendent's plan for the distribution of surplus of United States assets, a motion was made for a reference to consider the various companies' plans. These plans were proposals merely to transfer the surplus assets into a New York corporation and distribute the shares thereafter proportionately to the shareholders of the original companies.

The orders made on these applications provided in effect that the plan set forth in the Superintendent's second report and audit concerning the Northern Insurance Company of Moscow is the plan to be adopted in the distribution of the surplus assets in the other proceedings, and indicated that the court considered that conditions affecting all five insurance companies required the adoption of a similar plan.

We think that the testimony adduced before the plan referees in the Second Russian and Northern Insurance Company proceedings, in which final orders were made after hearings before referees, may be considered in connection with the plan or order for disposition of the surplus assets of these other companies. The international situation is identical; there may be more foreign creditors in one company than in another; the situation as regards the status of directors is similar; the means of reaching stockholders and creditors and of giving notice of these proceedings, and of gathering together shareholders or a list of shareholders living in Russia or in other foreign countries is common to all five companies.

The plan adopted in these cases by the orders of the Special Term is identical with the plan in the order appealed from in the Moscow Fire Insurance Company and Russian Reinsurance Company, and if adopted should apply also to these other companies.

The Superintendent's appeal from these plan orders is the same as that in the Russian Reinsurance Company case and the Northern Insurance Company of Moscow case, to wit, the appeals from

those portions which direct that the restraining clause in the restraining order be vacated; that in the event any judgment is entered on any claim the judgment creditors be restrained from collecting; that no creditor be barred from presenting a claim to the surplus fund; that any domestic creditor having a claim be permitted to offer proof thereof before transmission of the funds to a foreign liquidator, and that all other plans or parts of plans not specifically adopted (thereby including certain portions of the Superintendent's plan, viz., that funds be retained here until recognition) be denied and rejected.

The facts and questions of law are similar in all cases to the matters on appeal in the Russian Reinsurance Company case, and the same rule should be followed with respect to these five orders, *i. e.*, they should be modified by reversing the parts from which the Superintendent of Insurance has appealed, and as modified should be affirmed, with a direction that the funds should be retained by the Superintendent until a government is recognized in Russia by the United States, or until the surplus funds may be transmitted to a liquidator or legal representative of the corporation to the domicile abroad, or in accordance with any provisions of a treaty of the United States.

The orders made and dated November 19, 1927, in the Russian Reinsurance Company and First Russian Insurance Company cases, since they deny similar relief to the companies appellants as that refused to such companies on the present applications, should be affirmed.

That portion of the five orders, two entered on September 7, 1929, in the cases of the Russian Reinsurance Company and the Second Russian Insurance Company and three orders entered on September 10, 1929, in the cases of Northern Insurance Company of Moscow, First Russian Insurance Company and Moscow Fire Insurance Company, which adjudged that the court takes judicial notice of conditions in Russia — non-recognition by our government, continued existence of treaties with the former Empire, and their protective features — should be stricken out in each order, and as so modified the orders as heretofore modified should be affirmed.

DOWLING, P. J., MERRELL, FINCH and SHERMAN, JJ., concur.

Each of two orders entered on September 7, 1929, and each of three orders entered on September 10, 1929, modified as indicated in opinion, and as so modified affirmed. Settle orders on notice. Each of orders entered on November 19, 1927, affirmed.